IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03-CR-29 |
| | ) | (PHILLIPS/SHIRLEY) |
| MAURICE EDWARD HUGHLEY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate.  This case is before the Court on the defendant's numerous

*pro se* motions and other filings [Docs. 32, 33, 39, 92, 97, 98, 100, 101, 103, 105, 136, and 148]

requesting the dismissal of the indictment.  On July 1, 2004, this Court permitted the defendant,

upon a voluntary and knowing waiver of counsel, to represent himself. [See Docs. 107, 108, and

111]  At that time, the Court extended [Doc. 111] the long-expired motion-filing deadline in this

case to July 15, 2004.  The Court also agreed [Doc. 111] to consider the defendant's pending *pro*

*se* motions, notices, and declarations, which the defendant had filed despite his representation by

counsel.  Additionally, on July 14, 2004, the Court agreed [Doc. 112] to reconsider a number of

*pro se* motions filed earlier in the case and previously denied because they were filed in violation

of Local Rule 83.4(c), which prohibits a party from acting in his own behalf after appearing by

counsel.

1

On July 26, 2004, District Judge Thomas W. Phillips determined [Docs. 120 and 138] that the defendant should undergo a medical and neurological evaluation to determine his competency to stand trial and whether his medical condition impeded his ability to represent himself. The District Court conducted a competency hearing on December 21, 2005, and found [Docs. 154] the defendant to be competent. The District Court entered an order [Doc. 158] in this regard on December 27, 2004.

Following the District Court's finding that the defendant is competent, this Court arraigned [Doc. 164] the defendant on the Second Superseding Indictment on January 6, 2005. At this time, the Court requested that the government respond to several of the defendant's filings, including his Motion to Dismiss for Lack of a Speedy Trial [Doc. 98]. The government filed its responses less than a week later on January 12, 2005. The Court took the defendant's *pro se* motions and related filings under advisement on January 13, 2005.

The defendant is charged in the Second Superseding Indictment [Doc. 139] with one count of fraudulent possession of fifteen or more unauthorized access devices (credit cards) and five counts of possessing counterfeit checks on January 10, 11, 20, and 23, 2002. The defendant calls for the dismissal of the indictment, contending that (1) the District Court for the Eastern District of Tennessee lacks jurisdiction; (2) his right to a speedy trial has been violated; (3) his prosecution, as well as the local rules of court, violate the Ex Post Facto Clause of the United States Constitution; (4) the indictment contains substantive and procedural defects; and (5) for prosecutorial misconduct. The government opposes the defendant's contentions, arguing that the Court has jurisdiction over the defendant, who is being brought to trial as expeditiously as possible.

# I. ANALYSIS

Our Constitution requires that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury[.]" U.S. Const. Amend. V. The defendant raises numerous challenges to his indictment.[1] The Court will endeavor to address each of the defendant's contentions in turn.

## A. Jurisdiction

The defendant contends [Docs. 39, 92, 100, and 136] that the District Court of the Eastern District of Tennessee lacks jurisdiction over both his person and the subject matter of the action. Although the defendant's filings are often illegible or incomprehensible or both,[2] the Court will attempt to summarize what it believes the defendant to be arguing. The defendant begins with the basic premise that all criminal suits are commercial in nature [see Doc. 39]. As such, he contends that the Secretary of the Treasury must grant jurisdiction to an "inferior court" by issuing a certificate of protest. He maintains that no certificate of protest has issued in this case–a contention that he seeks to support with a November 16, 2004 letter from the deputy general counsel of the Office of Government Ethics (OGE), which states that the OEG has located no certificate of protest involving the defendant or the specified proceedings against him.

---

[1]The defendant was initially indicted [Doc. 3] in this case on March 5, 2003. A Superseding Indictment [Doc. 13] was filed on April 1, 2003. The Second Superseding Indictment [Doc. 139] was filed on August 4, 2004. Although the bulk of the defendant's motions relate to the Superseding Indictment [Doc. 13], the Court will examine the defendant's contentions as if they were made to the present indictment [Doc. 139] as well.

[2]The Court observes that it has previously characterized [Doc. 52] the defendant's motions as frivolous. As an example, the Court notes that the defendant has argued [Doc. 39] a lack of jurisdiction based upon defendant being a "vessel" subject only to admiralty jurisdiction.

[See Doc. 183, Exhibit A] The defendant argues that in the absence of a certificate of protest, the District Court lacks jurisdiction to adjudicate this case, and the indictment must be dismissed.

The government responds [Docs. 128 and 177] that the instant District Court has jurisdiction to hear actions that allege crimes against the United States and violations of the United States Code. It contends that the District Court's jurisdiction in this matter is "firmly established" by Article III of the United States Constitution, the United States Code, and case law.

The Court finds that the District Court has already ruled [Doc. 178] upon this issue in addressing the defendant's contention that he was entitled to habeas corpus relief due to the lack of jurisdiction. The District Court held that it "has both personal and subject matter jurisdiction to adjudicate this case. U.S. Const. Art. III, § 1, § 2, cl.1; 18 U.S.C. § 3231, 3237; United States v. Cotton, 535 U.S. 625, 631 (2002) (citing Lamar v. United States, 240 U.S. 60 64-65 (1916)); United States v. Ratigan, 351 F.3d 957, 963 (9th Cir. 2003) (citing De La Maza v. United States, 215 F. 2d 138, 140 (9th Cir. 1954))." Article III, § 1, provides in pertinent part that the "judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the congress may from time to time ordain and establish." Section 2 explains that the "judicial power shall extend to all cases, in law and equity, arising under this constitution, [and] the laws of the United States[.]" U.S. Const. Art. III, § 2 cl.1.

By statute, Congress has declared that the "district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." 18 U.S.C. § 3231. Moreover, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be

4

inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  In the present case, the defendant is charged [Doc. 139] with violating 18 U.S.C. §§ 513(a) and 1029(a)(3) and with having done so in the Eastern District of Tennessee.  Moreover, the defendant has been arrested [see Doc. 4] and brought before the District Court [see Doc. 10 and 15].  Thus, the District Court clearly has jurisdiction over both the subject matter of the case and the defendant's person.  The Court recommends that the defendant's pending *pro se* motions [Docs. 39, 92, 100, and 136] alleging a lack of jurisdiction be denied as moot because the District Court has already determined [Doc. 178] that it has jurisdiction in this case.

## B.  Speedy Trial

The defendant also contends [Doc. 98] that the indictment should be dismissed with prejudice because the government violated his right to a speedy trial by intentionally causing pretrial delay in this case.  In this regard, he maintains that at his April 4, 2003 arraignment on the Superseding Indictment, he raised the issue that the Court lacked jurisdiction. He argues that Magistrate Judge William Prince questioned the government about whether the defendant had psychological problems and needed mental treatment.  He maintains that both the government and defense counsel, Assistant Federal Defender Kim Tollison, agreed that the defendant was in need of treatment.  The defendant asserts that he never waived his right to a speedy trial.  The Court finds that the defendant is arguing that Magistrate Judge Prince ordered the defendant to undergo a mental evaluation without finding that good cause existed for such an evaluation.  Thus, the Court infers that he is contending that any time attributable to his first

5

mental evaluation is not properly excludable time under the Speedy Trial Act.

The government responds [Doc. 173] that the defendant's speedy trial rights have not been violated. It contends that defense counsel concurred in the mental evaluation ordered [Doc. 16] on April 4, 2003. It maintains that at the October 30, 2003 competency hearing in this matter, the defense argued that the defendant was not competent. Thus, it concludes that the delay caused by the defendant's first mental evaluation is properly excludable under the Act.

The Speedy Trial Act requires that the defendant be brought to trial within seventy days of the later of the filing of the indictment or the defendant's initial appearance before a judicial officer:

> [i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer or the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1); Henderson v. United States, 476 U.S. 321, 322 (1986); United States v. Culpepper, 898 F.2d 65, 66 (6th Cir. 1990). The Sixth Circuit has determined that the plain language of this section requires the entry of a plea of not guilty to trigger the running of the seventy-day period. United States v. O'Dell, 154 F.3d 358, 360 (6th Cir. 1998), cert. denied, 526 U.S. 1029 (1999). Certain periods of delay, such as the days on which the court conducts "proceedings concerning the defendant," are excluded from the speedy trial calculation. 18 U.S.C. § 3161(h)(1). Delay resulting from a mental examination of the defendant in order to determine competency to stand trial is also excludable time. 18 U.S.C. § 3161(h)(1)(A).

6

Additionally, up to ten days of the time required to transport the defendant to another district for a mental examination is excludable. 18 U.S.C. § 3161(h)(1)(H).

The Court finds that on March 12, 2003, the defendant had an initial appearance [Doc. 5] on the original indictment. On March 17, 2003, the defendant appeared before Magistrate Judge William Prince for an arraignment and detention hearing. The minutes [Doc. 10] from this hearing reflect that the defendant stated that he did not fully understand the charges and did not feel capable of entering a plea. Thus, the arraignment and detention hearing were reset for April 1, 2003. On April 1, 2003, the defendant again appeared before Magistrate Judge Prince, who ordered [Doc. 11 and 14] that the defendant be detained pending trial. The minutes [Doc. 11] from that hearing do not reflect that the defendant was arraigned on that day. Instead, they state that the grand jury was expected to return another indictment against the defendant that day. The transcript [Doc. 143] of the April 1 hearing confirms that the defendant was not arraigned on April 1, 2003.

The grand jury returned a Superseding Indictment [Doc. 13] against the defendant on April 1, 2003. The defendant appeared for an arraignment on the Superseding Indictment on the following day, April 2, 2003. The minutes [Doc. 15] of this hearing state that after questioning the defendant, Magistrate Judge Prince ordered that he be sent to the Federal Medical Facility (FMC) at Butner, North Carolina, for a mental evaluation. Although defense counsel initially attempted to enter a plea of not guilty on the defendant's behalf [see Doc. 122, Transcript, p.5], the defendant objected to his attorney's attempt, and ultimately, Magistrate Judge Prince continued the defendant's arraignment until his return to the district, [see Doc. 122, Transcript, p. 9]. The Court's order [Doc. 16], requiring a forty-five-day commitment, issued on

April 3, 2003. The days on which the defendant appeared in Court (March 12 and 17 and April 1 and 2) would be excludable under the Act, <u>see</u> 18 U.S.C. § 3161 (h)(1), but the Court finds that the speedy trial clock had not yet begun to run because the defendant had not entered a plea of not guilty to his charges.

The record reflects [Doc. 17] that the defendant arrived at FMC Butner on June 11, 2003, and returned [Doc. 21] from his evaluation on October 23, 2003. If the defendant's speedy trial time had been triggered, ten days of his transportation time and all of his examination time would be excludable from the speedy trial calculation. <u>See</u> 18 U.S.C. § 3161(h)(1)(A), -(H). On October 30, 2003, the undersigned Magistrate Judge held a hearing [Doc. 22], found the defendant to be competent to stand trial, and arraigned the defendant on the Superseding Indictment. The minutes [Doc. 22] from this hearing reflect that defense counsel, Mr. Tollison, entered a not guilty plea for the defendant and that the Court set a trial date of January 1, 2004. The Court finds that the defendant's speedy trial clock was triggered at this point, upon the finding that he was competent and the entry of a plea not guilty in his behalf.

The defendant appears to argue that Magistrate Judge Prince erroneously ordered the mental examination to determine his competency and, thus, that the delay caused by the mental examination is not excludable. A court may order a mental examination of a defendant upon its own motion if it finds "reasonable cause to believe that the defendant may be presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

At the time Magistrate Judge Prince ordered the mental evaluation, the

defendant's arraignment had already been continued once because he claimed he did not understand the charges against him. During the April 2, 2003 hearing, defense counsel informed the court that the defendant continued to deny that he understood the charges despite defense counsel's attempt to explain them to him. [See Doc. 122, Transcript, p.5] The defendant informed the court he was addicted to "drugs and alcohol, morphine, hydrocodone." [See Doc. 122, Transcript, p.6] Moreover, when asked if he understood the charges, the defendant replied:

> I do not, Your Honor, because it's to my understanding to be brought before an inferior district court, a admiralty of maritime jurisdiction, there have to be a contract between me and the office or party, which is the United States. In this situation and under this complaint, there is no alleged of a contract ever existed between me and the United States government. So, no, Your Honor, I do not understand the nature of these charges.

Subsequently, the defendant added:

> The charges, Sir, that I have inquired about is, this is an inferior court of admiralty of maritime jurisdiction which has contract law, not criminal law. And if I violated a contract with the government, Your Honor, to be brought before you, I ask that the government put that contract into existence. If not, Your Honor, I ask that these charges be dismissed.

[See Doc. 122, Transcript, p.7]

At the April 2 hearing, the defendant also told the court that he had mental problems: "Prior to my total disability, I suffered significant brain damage and memory loss and probably other situations that does hamper my ability to function, and I do need the psychological therapy that I have been denied for the last ten months." [See Doc. 122, Transcript, p.7] The defendant denied ever being treated for his claimed psychological

9

problems. When the court asked what defense counsel thought about sending the defendant for a mental examination, defense counsel said that "in view of the statements he's made this morning, I think that would be absolutely necessary." [See Doc. 122, Transcript, p.9] The government had no objection to an examination. While the defendant did voice an objection to the examination, it was to the location of Butner, North Carolina, rather than to the examination itself, as he preferred to be sent to Rochester, Minnesota. [See Doc. 122, Transcript, p.10]

Based upon a review of the transcript [Doc. 122] of the April 2, 2003 hearing, the Court finds that Magistrate Judge Prince had reasonable cause to order a mental evaluation. The defendant continued to claim he did not understand the charges despite defense counsel explaining them to him, and the defendant related that he had untreated psychological problems. The Court also notes that defense counsel agreed that an examination was necessary and that the defendant objected only to the location. The Court finds that a mental examination was proper and that the time necessary to conduct the examination is excludable time.

More importantly, the Court finds that Magistrate Judge Prince could not arraign the defendant due to questions about the defendant's competency. As noted above, the Sixth Circuit has held that the "plain meaning for the language of the STA requires a not guilty plea to being the clock running." O'Dell, 154 F.3d at 360. In so holding, the court reasoned that the legislative history of the Act required such an interpretation, finding that Congress sought to conserve judicial resources by avoiding the unnecessary scheduling of a trial until such time as the defendant pled not guilty signaling an intent to proceed to trial. Id. at 360-61. The Eastern District of Michigan has followed this interpretation in United States v. Goward, No. 02-20043-BC, 2004 WL 114974, *6 (E.D. Mich. Jan. 15, 2004), observing that "[t]his Circuit construes the

term 'appear' to mean 'arraignment,' that is, when the defendant enters a not-guilty plea." Thus, the Goward court held that although the defendant first appeared before the Magistrate Judge on August 29, 2002, for a detention hearing, the speedy trial clock did not begin to run until the defendant's arraignment on October 15, 2002. Id.

The Court notes that a separate panel of Sixth Circuit justices has sought in an unpublished case to limit O'Dell to its "unique factual circumstances." United States v. Jackson, No. 00-1653, 2001 WL 1042180, **1 (6th Cir. Aug. 30, 2001). Nevertheless, the Court finds that the published case remains the binding precedent in this circuit.[3] See United States v. Ennenga, 263 F.3d 499, 504 (6th Cir. 2001) (ruling that unpublished cases are not controlling precedent). Moreover, the Court finds that questions surrounding the defendant's competency provided a compelling reason to delay the defendant's arraignment. Beyond the conservation of judicial resources, the delayed arraignment was necessary to assure that the defendant was able to "understand the nature and consequences of the proceedings against him or to assist properly in his defense," see 18 U.S.C. § 4241(d), which includes the entry of a plea to the charges. Thus, the time that lapsed between the April 2, 2003 hearing and the October 30, 2003 competency hearing and arraignment did not count on the speedy trial clock.

With regard to the time following the defendant's arraignment, the Court notes that the defendant had already filed a *pro se* petition for habeas corpus relief [Doc. 20] on September 29, 2003. The defendant filed additional *pro se* motions on November 11, 2003 [Docs. 27-29] , and on November 25, 2003 [Docs. 32-40]. Additionally, Mr. Tollison filed a

---

[3]Interestingly, the Jackson case, which arose out of the Eastern District of Michigan, was not even mentioned in Goward's analysis of the triggering date for the speedy trial clock.

motion to withdraw as counsel [Doc. 41] on December 3, 2003. All the time from the filing of

these motions, through their hearing [Doc. 42] on December 10, 2003, and ultimate resolution[4]

[Docs. 49 and 52] by the Court on December 15, 2003, is excludable time under the Act. See 18

U.S.C. § 3161(h)(1)(F), -(J).

   On December 15, 2003, the defendant, through counsel, appealed [Doc. 50] the

denial of the withdrawal of counsel to the District Court. The District Court heard this motion

on December 22, 2003 [Doc. 54], granted the defendant new counsel (Attorney Donny Young),

and granted an oral motion to continue the trial to June 3, 2004. In its order [Doc. 55] granting

an ends-of-justice continuance, the court found all time between the December 22, 2003 hearing

and the new trial date of June 3, 2004, to be fully excludable time under the Act. On May 11,

2004, this Court granted [Docs. 81 and 84] another ends-of-justice continuance requested by the

defendant's third attorney, Mr. Robert Kurtz, in order to allow Mr. Kurtz the reasonable time

necessary to prepare for trial. During the May 11 hearing, the Court questioned the defendant,

who agreed [see Doc. 84] that he had no objection to the continuance. Pursuant to this

continuance, the Court found [Doc. 84] that the time from the former June 3, 2004 trial date and

the new trial date of July 22, 2004, was fully excludable under the Act. On May 24, 2004, the

Court again continued [Docs. 86 and 90] the trial to September 14, 2004, finding all the time

from July 22, 2004, to the new trial date of September 14, 2004, to be fully excludable pursuant

---

[4]The Court notes that the defendant's petition for habeas corpus relief [Doc. 20] was not originally docketed as a motion. Thus, the Court did not rule on it in December 2003, and it remained pending until District Judge Phillips ruled upon it [Doc. 178] on January 12, 2005. For purposes of the speedy trial analysis, the Court will treat it like those *pro se* motions, which the Court denied for non-compliance with the local rules [Doc. 52] and reinstated [Doc. 112] after the defendant undertook to represent himself.

to an ends-of-justice continuance. At this hearing, the defendant stated [see Doc. 90] in open court that he agreed with his attorney's request for a continuance even though it might mean his additional detention.

On July 26, 2004 [Docs. 120 and 138], the District Court continued a hearing on the defendant's appeal of this Court's denial of bond and ordered that the defendant undergo a second mental evaluation to determine his competency to stand trial. On August 24, 2004, the District Court granted [Doc. 144] an ends-of-justice continuance to give the defendant the time reasonably necessary to undergo a mental evaluation and to prepare for trial. The court excluded [Doc. 144] all time between the defendant's July 26, 2004 oral motion for a continuance and the new trial date of January 19, 2005. On December 21, 2004, the District Court found the defendant competent to stand trial and granted [Docs. 154 and 159] the defendant's oral motion to continue the January trial date. Pursuant to the ends-of-justice continuance, the court excluded [Doc. 159] all time from the defendant's December 21, 2004 oral motion to continue to the new trial date of March 7, 2005.

Thus, the Court finds that all of the time from the defendant's October 30, 2003 arraignment on the Superseding Indictment to the present trial date of March 7, 2005, has been excludable time under the Speedy Trial Act, either because the defendant had motions pending or because he requested and was granted ends-of-justice continuances. See 18 U.S.C. § 3161(h)(1)(F), -(J), -(8)(A)-(B). Accordingly, the Court recommends that the District Court deny the defendant's Motion to Dismiss for Lack of Speedy Trial [Doc. 98]. The Court notes that this finding is in accord with the District Court's earlier ruling that the Speedy Trial Act has not been violated in this case:

13

> Defendant has moved to dismiss this action for violation of the Speedy Trial Act [Doc. 167]. The court notes that defendant has had five different lawyers appointed by the court to represent defendant. Defendant, in turn, has fired all five of them. It does not appear that any of the delays in this case were occasioned by an improper action of the government. In fact, all of the delays in this case were occasioned by defendant's refusal to accept legal counsel or to abide by their advice. Consequently, there is no violation of the Speedy Trial Act in this case.

[Doc. 178]

## C. Ex Post Facto Violations

The defendant also alleges [Docs. 97 and 103] violations of the Ex Post Facto clause of the Constitution. He contends [Doc. 97] that 18 U.S.C. §§ 513(a) and 1029, the statutes under which he has been charged, violate the Ex Post Facto clause because they conflict with the Constitution. The Court interprets[5] his motion [Doc. 97] to be arguing that these statutes must be "dismissed" because the Judicial Act of 1787 to 1789 states that only gold and silver can be counterfeited. He also argues that credit cards, checks, lines of credit, "demand deposit," letters of credit, "checkbook money,"and other evidence of debt are not legal tender under the Constitution and, therefore, are not "money." Although the defendant's motion calls for the dismissal of these statutes, the Court takes him to be asking for the dismissal of the

---

[5]The Court notes that the defendant has titled the pleading in question [Doc. 97] a Notice to Take Judicial Notice that Title 18 U.S.C.A. Sections 1029 and Title 18 U.S.C.A. Section 513(a) Violate the Ex Post Facto Clause of Article I, Section 9, Clause 3, and Article 10, Clause 1, of the United States Constitution. The arguments contained therein are disconnected and confusing. Thus, the Court's account of the defendant's contentions reflects the Court's own attempt to discern what the defendant is arguing in this pleading.

indictment because the charges are unconstitutional. The government responds [Doc. 170] that the defendant's contentions lack merit as to all relief requested.

As a limitation on congressional power, the Constitution states that "[n]o bill of attainder or ex post facto law shall be passed." U.S. Const. Art. III, § 9, cl.3. A Bill of Attainder is a "legislative act, directed against a designated person, pronouncing him guilty of an alleged crime, (usually treason) without trial or conviction according to the recognized rules of procedure, and passing sentence of death and attainder upon him." Black's Law Dictionary 162 (4th ed. 1968). Ex post facto laws are defined as follows:

> 1st. Every law that makes an action , done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Calder v. Bull, 3 U.S. 386, 390 (1798); see also Collins v. Youngblood, 497 U.S. 37, 42, 50 (1990). "The purpose of the ex post facto prohibition is 'to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" United States v. Reese, 71 F.3d 582, 585 (6th Cir. 1995) (quoting Weaver v. Graham, 450 U.S. 24, 28-29 (1981) (citations omitted)).

In the present case, the Second Superseding Indictment [Doc. 139] charges the defendant with violating 18 U.S.C. § 513(a), which provides that

> Whosoever makes, utters or possesses a

15

counterfeited security of a State or a political
subdivision thereof or of an organization, or
whoever makes, utters or possesses a forged
security of a State or political subdivision thereof or
of an organization, with intent to deceive another
person, organization, or government shall be fined
under this title or imprisoned for not more than ten
years, or both.

The code reveals that his law was initially enacted in 1984, and the most recent amendment

occurred in 1994. Section 1029 governs fraud in connection with access devices (which are

items used to access an account). 18 U.S.C. § 1029. Section 1029 was enacted in 1984, and the

most recent amendment on November 2, 2002, made changes to the punctuation only. See Pub.

L.. 107-273, Div. B, Title IV, § 4002(b)(11), 116 Stat. 1808 (Nov. 2, 2002). The code reveals

that prior to November 2002, the statute was last amended in October 2001. Thus, the offenses

at issue, allegedly committed in January and February 2002, occurred after the enactment of both

of these statutes.

The Court finds that the statutes under which the defendant is charged are not ex

post facto–or after the fact–laws with respect to the alleged criminal conduct. Moreover, the

Court observes that the ex post facto analysis does not apply to the defendant's arguments.

Finally, the Court has found no case holding sections 513(a) or 1029 to be unconstitutional for

the reasons stated by the defendant or for any reason whatsoever. Thus, the Court finds that the

defendant is not entitled to relief on this issue and recommends that his motion to dismiss the

indictment [Doc. 97] due to the unconstitutionality of sections 513(a) and 1029 be denied.

The defendant also contends [Doc. 103] that Local Rule 83.4(c), which prohibits a

16

party from acting in his own behalf after appearing by counsel, violates the Ex Post Facto clause and acts as a Bill of Attainder by denying him access to the court and preventing him from presenting his own defense in that it requires an attorney to act for him. He also argues that the local rule denies his Sixth Amendment right to assistance of counsel because he is prohibited from filing pleadings while he is represented by an attorney. In this respect, he asserts that as officers of the court, attorneys are prohibited from challenging the court's jurisdiction. He asks for leave to pursue his jurisdictional issues without restriction. The government responds [Doc. 174] that the defendant's motion is moot because he is now representing himself.

Initially, the Court notes that the defendant has no constitutional right both to represent himself and to be represented by an attorney at the same time. United States v. Mosely, 810 F.2d 93, 98 (6th Cir.), cert. denied, 484 U.S. 941 (1987); see also Faretta v. California, 422 U.S. 806, 835 (1975). "The right to defend pro se and the right to counsel have been aptly described as 'two faces of the same coin,' in that waiver of one right constitutes a correlative assertion of the other." Id. (quoting United States v. Conder, 423 F.2d 904, 908 (6th Cir.), cert. denied, 400 U.S. 958 (1970)). Thus, the Court finds the fact that Local Rule 83.4(c) prohibits the defendant from filing motions while he is represented by counsel does not violate the defendant's Sixth Amendment rights.

Second, the Court finds that the defendant now represents himself and that, therefore, his objection to the local rules is moot. Moreover, both this Court and the District Court have considered the defendant's contention regarding the lack of jurisdiction. Accordingly, the Court recommends that the District Court deny the defendant's ex post facto challenge to the local rules [Doc. 103].

17

### D. Defects in the Indictment

The defendant alleges [Doc. 33] several substantive and procedural defects in the Superseding Indictment [Doc. 13]. He argues that (1) the motion to amend the indictment was not made orally or placed on the motion calendar, (2) the Superseding Indictment was not presented to the grand jury, dated, or signed by the foreperson, and (3) that he has not been arraigned on the Superseding Indictment.

The government responds [Doc. 125] that the grand jury handed down the Superseding Indictment on April 1, 2003. It argues that grand jury proceedings are secret and that there is no requirement that the government seek leave of the trial court to supersede an indictment. It maintains that the fact that the Superseding Indictment was presented to the grand jury and signed by the foreperson is evident from the face of the document. Finally, it contends that the defendant was arraigned on the superseding indictment on April 2, 2003.

The Court finds that the defendant's contentions are without merit. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Nevertheless, the prosecutor's decision to prosecute may not be based upon the defendant's choice to exercise his or her constitutional rights. United States v. Davis, 15 F.3d 526, 529 (6th Cir. 1994). In the present case, the Superseding Indictment, filed on April 1, 2003, followed closely on the heels of the original indictment, filed on March 5, 2003. There is no evidence in the record that the prosecutor's decision to seek a superseding indictment was in any way related to the defendant's assertion of a constitutional right. The Court finds the

18

same to be true with respect to the Second Superseding Indictment [Doc. 139].

Rule 6(c), Fed. R. Crim. P., states that the grand jury foreperson "will sign all indictments." Both the Superseding Indictment [Doc. 13] and the Second Superseding Indictment [Doc. 139] have been signed by the grand jury foreperson. Both bear the date-stamp of the date on which they were filed. Finally, the Court finds that the defendant has been arraigned on both the Superseding Indictment and the Second Superseding Indictment. As discussed above, the defendant appeared for his arraignment on the Superseding Indictment on April 2, 2003. [See Doc. 122] After reading the Superseding Indictment to the defendant, Magistrate Judge Prince determined that the defendant should have a mental evaluation and continued the arraignment. [See Doc. 122] The Court held a competency hearing on October 30, 2003, at which time it found the defendant was competent to proceed to trial [Doc. 22]. The minutes from that hearing reflect that following the competency determination, the defendant was arraigned on the Superseding Indictment. Thus, the defendant was arraigned on the Superseding Indictment on October 30, 2003, nearly one month before he filed the instant *pro se* motion [Doc. 103] alleging that he had not been arraigned.

Additionally, the Court finds that the defendant was arraigned [Doc. 164] on the Second Superseding Indictment on January 6, 2005. The defendant declined to enter a plea to the Second Superseding Indictment so the Court entered a not guilty plea for him. See Fed. R. Crim. P. 11(a)(4) (providing that if "a defendant refuses to enter a plea . . ., the court must enter a plea of not guilty"). Accordingly, the Court finds that the defendant's substantive and procedural challenges to the indictment lack merit and recommends that his motion to dismiss [Doc. 33] on these grounds be denied.

## E. Prosecutorial Misconduct

Finally, the defendant contends [Docs. 32, 101, 105, and 148] that the indictment should be dismissed for prosecutorial misconduct. Specifically, he argues that (1) the government has selectively prosecuted him because of his race [Doc. 32, see also Doc. 148] and (2) the government has failed to answer his contentions regarding the lack of jurisdiction [Docs. 101 and 105[6]]. The government responds [Docs. 124 and 177] that the defendant has failed to show a discriminatory effect with regard to his prosecution and that the Court has jurisdiction to adjudicate this case.

The defendant contends [Doc. 32] that since his incarceration in Blount County Jail, his conversations with prisoners similarly charged have revealed that only blacks and non-whites are being prosecuted for violations of 18 U.S.C. § 3147. Section 3147 provides for an increased penalty for offenses committed while on pretrial release. With regard to his alleged selective prosecution, the defendant seeks to discover the following information, pursuant to Rule 16, Fed. R. Crim. P., in support of his belief that he was prosecuted on federal rather than state charges due to his race:

> (1) A list of all cases from the previous ten years in which the government charged violations of 18 U.S.C. §§ 513(a) or (c)(4), 1029, and 3147;
>
> (2) The race of the defendants in those cases;
>
> (3) Whether state, federal, or joint law enforcement agencies investigated each case; and

---

[6]The Court notes that documents 101 and 105 are identical.

(4) The criteria used by the United States
Attorney's Office in deciding whether to prosecute
these types of cases in federal court.

"The Attorney General and United States Attorneys retain "'broad discretion'" to enforce the Nation's criminal laws."  United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Wayte v. United States, 470 U.S. 598, 607 (1985)).  Because prosecutors are statutorily designated as the President's delegates, their decisions are entitled to a "presumption of regularity" unless there exists clear evidence to the contrary.  Id.  On the other hand, prosecutorial decisions are subject to constitutional restraints.  Id.  Hence, "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification,'" in violation of the equal protection component of due process.  Id. (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).

In order to establish a selective prosecution claim, the defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'  To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." Id. at 465 (quoting Wayte, 470 U.S. at 608) (citations omitted).  Rule 16, Fed. R. Crim. P., does not automatically authorize the production of government documents relevant to the preparation of selective prosecution claims, as opposed to items material to the defendant's defense against the government's case-in-chief.  Id. at 463.  Instead, the "justifications for a rigorous standard for the elements of a selective-prosecution claim [also] require a correspondingly rigorous standard for discovery in aid of such a claim."  Id. at 468.  As a threshold to discovery of government materials to support a selective prosecution claim, the defendant must make "a credible showing

21

of different treatment of similarly situated persons." Id. at 470.

In Armstrong, the Supreme Court examined the showing necessary for a defendant to be entitled to discovery in relation to a race-based selective prosecution claim. In that case, the defendants contended that they were selectively prosecuted for conspiracy to possess with intent to distribute crack and for related firearms offenses because they were black. Id. at 458-59. In support of their request for discovery and that the indictment be dismissed, they produced an affidavit by a paralegal with the Federal Public Defender's Office stating that all defendants who were prosecuted for violating the same statutes as the Armstrong defendants and whose cases were closed by the Federal Defenders in 1991 were black. They also produced a "study" listing twenty-four defendants, their race, if they were prosecuted for dealing cocaine as well as crack, and the status of their case and a newspaper article discussing the discriminatory effect of federal drug sentencing laws. Additionally, they produced an affidavit from one defense attorney's conversation with a drug treatment center intake coordinator, who told the attorney that the center encountered an equal number of caucasian and minority drug users and dealers. The Court held this showing insufficient to establish a selective prosecution claim. Id. at 470. It noted that the "study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." Id. Furthermore, the affidavits "recounted hearsay and reported personal conclusions based on anecdotal evidence." Id.

In the present case, the defendant's showing that he has been selectively prosecuted because of his race falls far short of the insufficient showing in Armstrong. The defendant does not even submit an affidavit but merely states in his motion [Doc. 32] that

22

pursuant to "his conversation[s] with black and white prisoners that are similar[ly] charged as the defendant, that only blacks and non-whites were being selectively prosecuted for violation of 18 U.S.C. § 3147. The Court finds this bare and general allegation to be insufficient to provide a credible showing that similarly situated persons have been treated differently.

As evidence of the government's alleged racial prejudice, the defendant has also filed [Doc. 148] as an exhibit an altered copy of the District Court's order [Doc. 138] committing him to FMC Butner for his second mental evaluation. The defendant appears to contend [Doc. 148] that the underlining on this document reveals an attempt by the Office of Pretrial Services to influence the doctors at Butner to write a false report. The defendant argues that such conduct is evidence of the government's attempt to "set up" the defendant.

With regard to the defendant's proffered exhibit [Doc. 148], the Court finds that there is no evidence regarding who underlined portions of the commitment order. Moreover, nothing about the underlining of the statutes authorizing the evaluation, the location of the evaluation, and the length of the evaluation indicates that the evaluating doctors should be influenced in any way, much less to write a false report. Additionally, although not mentioned by the defendant, the Court finds that the notations of "41" and "46" on page three appear to refer to the statutes authorizing findings on the particular questions requested by the District Court. Thus, nothing about the defendant's exhibit reveals an attempt to influence the doctors at Butner or racial prejudice on the part of the government.

Thus, the Court concludes that the defendant is not entitled to the requested [Doc. 32] discovery because he has failed to make the necessary threshold showing of discriminatory treatment. For this same reason, the Court recommends that the District Court deny his motions

to dismiss the indictment [Doc. 32 and 148] for selective prosecution.

The defendant also alleges [Docs. 101 and 105] prosecutorial misconduct in the government's failure to respond to his challenges to jurisdiction. He maintains that at the time he filed his motions on June 18, 2004, the government had gone fourteen months without proving that the Court has jurisdiction over the defendant. The defendant contends that the indictment should be dismissed if the government fails to enter a certificate of protest from the Secretary of the Treasury within ten days of the filing of those motions.

The Court notes that the defendant's numerous *pro se* motions contending a lack of jurisdiction were not properly before the Court until July 2004, when the Court agreed [Doc. 111] to consider the defendant's *pro se* motions after the defendant waived his right to counsel and insisted on representing himself. At that time, the Court gave the government time to respond to the defendant's motions. On August 2, 2004, the government filed responses [see Docs.128 and 132] alleging that the Court did have jurisdiction. Both this Court and the District Court [see Doc. 178] have now addressed the defendant's jurisdictional issues. Accordingly, the Court recommends that the defendant's motions [Docs. 101 and 105] to dismiss the indictment due to the government's failure to file responses should be denied.

## II. CONCLUSION

For the reasons set forth herein, the Court **RECOMMENDS** that defendant's motions to dismiss the indictment for lack of jurisdiction [**Docs. 39, 92, 100, and 136**] be **DENIED as moot** and that the defendant's other motions to dismiss the indictment [**Docs. 32, 33, 97, 98, 101, 103, 105**, and **148**] be **DENIED** .[7]

ENTER:

    s/ C. Clifford Shirley, Jr.   
United States Magistrate Judge

---

[7]Any objections to this report and recommendation must be filed with the clerk of the court within ten (10) days of receipt of this notice. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the specified time waives the right to appeal the district court's order. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

25