IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:03-CR-29 |
| | ) | (VARLAN/SHIRLEY) |
| MAURICE EDWARD HUGHLEY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This cause came before the undersigned upon the defendant's eight pending motions:

(1) Motion to Compel Psychiatric Examination of Compelling Witness [Doc. 203], filed on February 22, 2005;

(2) Motion for Court Order to be Transported to FMC Lexington to Have Adequate Access to Medical Services and Law Library [Doc. 207], filed on February 22, 2005;

(3) Motion in Limine Prohibiting the Admission of Maurice Hughley's Prior Record Into Evidence [Doc. 210], filed on February 22, 2005;

(4) Motion for Inspection of Grand Jury List Pursuant to Title 28 USCA § 1861 and/or Dismissal Pursuant to Title 28 USCA § 1867(a) [Doc. 215], filed on February 22, 2005;

(5) Motion for Court Order for Return of Illegal Seized Property [Doc. 230], filed on March 2, 2005;

1

(6) Motion for Court Order to be Transferred to FMC Lexington Federal Prison for Legal Access to the Courts and Medical Assistance [Doc. 241], filed on March 22, 2005;

(7) Motion for Hearing Before the Honorable Judge Thomas A. Varlan on Docket # 242 - Pro Se Motion to Transfer Defendant to FMC Lexington to Have Access to the Court [Doc. 243], filed April 12, 2005; and

(8) Motion for Court Order to Order U.S. Attorney Ed J. Schmutzer to Comply with Freedom of Information Act of 1973, Privacy Act of Title 5 U.S.C.A. Section 552, 552(a). Docket #134. [Doc. 245], filed on April 12, 2005.

Pursuant to the Court's order [Doc. 259], the government filed responses [Docs. 266, 267, 268, and 269] on June 1, 2005. The Court does not believe a hearing on these motions is necessary and will address them each in turn.

## I. PSYCHIATRIC EXAMINATION OF GOVERNMENT WITNESSES

The defendant moves [Doc. 203] the Court to order government witnesses Donna Smith and Greg Gillis, Sr., to submit to a psychiatric examination at government expense to assess the witnesses' "mental attitude prior to trial." In support of this motion, the defendant has filed an affidavit [Doc. 204], which states that the requested psychiatric evaluations are necessary because the government's case rests entirely upon the credibility of these witnesses, who have sold and used narcotics extensively and have possessed guns. The defendant avers that such persons are "frequently unworthy of belief" and are "psychopathic liar[s]." He maintains that their criminal histories reveal that they engage in patterns of "anti-social behavior." He argues that due process and the interest of justice require the Court to order the requested psychiatric examinations, which will prove the witnesses are not credible.

2

The government responds [Doc. 267] that the defendant's motion is untimely in that it was filed approximately seven months after the defendant's July 15, 2004 motion-filing deadline. It also contends that the defendant provides no authority permitting him to have government witnesses submit to mental evaluations and that it is aware of none.

The Court agrees that the motion is untimely and that the defendant has failed to provide any explanation, much less good cause, for filing this motion beyond the deadline. See Fed. R. Crim. P. 12(e). Nevertheless, it is not clear from the record when the defendant learned that Donna Smith and Greg Gillis, Sr., would be witnesses for the government and whether he gained that knowledge after the motion-filing deadline. Accordingly, out of an abundance of fairness to the defendant, the Court will treat the motion like a motion in limine and will not dismiss it based upon its untimeliness.

While federal law provides for mental examinations of defendants in certain, limited situations, see 18 U.S.C. §§ 4241, 4242, these provisions do not authorize compelled mental evaluations of witnesses. The Sixth Circuit has held that a "court cannot order a non-party witness to be examined by a psychiatrist." United States v. Ramirez, 871 F.2d 582, (6th Cir. 1989) (upholding the trial court's denial of the defendant's motion to compel a government witness who had abused narcotics to submit to a mental examination). The Ramirez court noted that a court could condition a witness's testimony on him or her first submitting to a mental examination but cautioned that this option should be "exercised sparingly," observing that credibility determinations are for the jury and not for experts. Id.

In the present case, the defendant expressly wants the mental expert to testify to the witnesses' lack of credibility. An expert witness may not testify regarding credibility because

3

credibility is an issue for the jury. Hoult v. Hoult, 57 F.3d 1, 7 (1st Cir. 1995) (reasoning that '[w]hen an expert witness testifies with respect to the credibility of a victim/witness there is a real danger that jurors will lend too much credence to the expert's evaluation of the victim's credibility, at the expense of their own independent judgment of credibility"); United States v. Rouse, 111 F.3d 561, 571 (8th Cir. 1997) (determining expert's opinions about the credibility of the victims were properly excluded because such assessment is "the exclusive function of the jury"); United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999) (holding that "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702"). Instead, the defendant may attempt to cast doubt upon the witnesses' credibility through cross-examination. See Ramirez, 871 F.2d at 584 (noting that the fact of narcotics "usage or addiction is certainly an appropriate subject of cross-examination"). Accordingly, the defendant's motion [Doc. 203] to compel government witnesses to submit to a mental examination at government expense is **DENIED**.

## II. ACCESS TO MEDICAL SERVICES AND LAW LIBRARY

The defendant seeks [Docs. 207, 241, and 243] to be transferred to the Federal Medical Center in Lexington, Kentucky (FMC Lexington), in order to have adequate access to medical services and to a law library. With regard to the medical issue, the defendant contends that he is experiencing complications of his medical condition Chronic Inflammatory Demyelinating Polyradiculoneuropathy (CIDP), specifically swelling and pain over his heart and in his hands and legs. He asserts that he cannot get adequate treatment for his condition at the Knox County Jail,

4

where he is presently detained. He also states that he needs pain medication and steroids to keep his illness stable and to control chronic pain. With regard to the law library issue, the defendant contends that he is representing himself and that the Knox County Jail does not have an adequate law library. He maintains that the Knox County Jail does not have any law books.[1] The defendant requests a hearing on this issue and, citing <u>Bounds v. Smith</u>, 430 U.S. 817 (1977), contends that the insufficiency of the law library interferes with his access to the Court.

With regard to the defendant's assertions about his medical condition, the Court notes that the defendant was previously transferred to FMC Lexington upon the entry of a judgment in another case and designation to that facility by the Bureau of Prisons. Although FMC Lexington sought to return the defendant to the Eastern District of Tennessee, the defendant's attorney[2] moved that he be allowed to remain at FMC Lexington in light of the defendant's complaints about receiving inadequate medical care at Blount County Jail, where he was initially detained in this case. Without finding that Blount County Jail had provided inadequate treatment, the Court ordered [Doc. 63] that the defendant remain at FMC Lexington, noting that defense counsel believed this to be in the defendant's best interest medically. When the defendant returned from FMC Lexington, he stated that he had not wanted to remain there, despite his continued insistence that his medical condition required special treatment.

In May 2004, the Court permitted the defendant to reopen the issue of his detention and held

---

[1] The Court notes that in a later motion [Doc. 256] requesting extensions of time to file a response and to appeal an order, the defendant characterized the law library at the Knox County Jail as "limited," contending that it does not have any Federal or Supreme Court Reporters. He also contends that prisoners are only allowed to go to the law library one hour per pod per week.

[2] The defendant was represented by Attorney Donny Young at that time.

5

a detention hearing at which a nurse practitioner from the Blount County Jail testified regarding the defendant's medical treatment and past and present medical conditions and needs. The Court found [Doc. 89] that the medical treatment the defendant was receiving at Blount County appeared sufficient and denied his request for release on bond. The defendant appealed this ruling to the District Court, which subsequently ordered [Doc. 138] that the defendant undergo a mental evaluation because it had "serious concerns that the defendant's competency may be affected by his current medical condition." On December 27, 2004, the District Court ordered [Doc. 158] that the defendant was competent to stand trial finding that he was not "presently suffering from a medical/ mental disease or defect rendering him mentally incompetent." The sealed report [Doc. 150] from the evaluating doctors at FMC Butner states that the doctors discontinued two of the medications the defendant was taking, finding he no longer needed them, and that he was discharged on certain medications.

After reviewing the defendant's motions and this history, the Court concludes that the defendant has presented no evidence that he has attempted to follow the administrative procedures in place to request medical treatment. The defendant is **DIRECTED** to follow these administrative procedures to address any complications of his medical condition. If the defendant is unable to gain medical treatment using these procedures and if he is able to show both a basis for his assertions and that he has attempted to seek relief though the administrative procedures available to him, then the Court will conduct another inquiry into his medical treatment.

The Court next turns to the defendant's assertions regarding access to the Court and the inadequacy of the law library at the Knox County Jail. The Court first notes that the defendant is presently representing himself, after firing three court-appointed attorneys, and that the Court has

6

appointed Attorney A. Philip Lomonaco to serve as standby counsel.[3] It is well-settled in the Sixth Circuit that the government "does not have to provide access to a law library to defendants in criminal trials who wish to represent themselves." United States v. Smith, 907 F.2d 42, 45 (6th Cir. 1990); see also United States v. Kincaide, 145 F.3d 771, 778 (6th Cir. 1998); United States v. Sammons, 918 F.2d 592, 602 (6th Cir. 1990). Instead, the defendant's right to legal assistance under the Sixth Amendment is satisfied by the offer of court-appointed representation. Sammons, 918 F.2d at 602. "[B]y knowingly and intelligently waiving his right to counsel, the [defendant has] also relinquished his access to a law library."[4] Smith, 907 F.2d at 45 (analyzing defendant's complaint that the law library where he was detained was inadequate because it contained only six outdated books).

The defendant relies upon Bounds v. Smith, 430 U.S. 817 (1977), in arguing that the lack of an adequate law library denies him access to the Court. In this case, the Supreme Court examined the question of "whether States must protect the right of prisoners to access to the courts by providing them with law libraries or alternative sources of legal knowledge." Id. at 817. The High Court observed that "[i]t is now established beyond doubt that prisoners have a constitutional right of access to the courts." Id. at 821. It ultimately held that this constitutional right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing

---

[3]The Court also notes that Mr. Lomonaco is the defendant's third standby attorney and that the Court recently denied [Doc. 249] the defendant's request to discharge Mr. Lomonaco, whom the defendant had previously requested by name.

[4]The Court notes that while the defendant claims he does not have access to an adequate law library, his filings, including recent filings, contain citations to federal statutes and case law (albeit, often incomplete citations). This indicates to the Court that the defendant has some access to legal materials.

7

prisoners with adequate law libraries *or adequate assistance from persons trained in the law*." Id. at 828 (emphasis added). In the present case, the defendant has been offered and has rejected the assistance of counsel. Thus, if his access to the Court is in any sense restricted, it is by his own knowing and voluntary choice to represent himself. Moreover, the Court finds that the defendant's numerous *pro se* filings reflect that the defendant's access to the Court has not been limited.

The Court notes that in at least one of the above cited cases, the judge made special accommodations for the *pro se* defendant to allow the defendant the use of a law library. See, e.g., Sammons, 918 F.2d at 601-02 (describing how Judge Edgar let the defendant use the court's law library). Such is not an option in the present case due to the defendant's demonstrated ability to flee in situations less restrictive than incarceration. Accordingly, the defendant's motions to be transferred to FMC Lexington [**Docs. 207, 241, and 243**] are **DENIED**.

### III. DEFENDANT'S PRIOR RECORD

The defendant moves [Doc. 210] the Court to prohibit the government from introducing his prior criminal record into evidence as such would be highly prejudicial and would unfairly influence the jury. In so arguing, he cites to Old Chief v. United States, 519 U.S. 172 (1997). First, the Court observes that Old Chief, which holds that a defendant should be allowed to concede the fact of his prior conviction in a felon in possession of a firearm case when the type of conviction is likely to taint the jury, is not relevant to this case. See Id. at 197. Here, the defendant is not charged with being a felon in possession of a firearm. Instead, the defendant's contentions more properly fall within Rules 404(b) and 609, Fed. R. Evid. Because this issue, which is styled as a motion in limine, relates to the admissibility of evidence, it is a matter for the trial judge to determine at or near the

8

time of trial. Accordingly, the defendant's Motion in Limine Prohibiting the Admission of Maurice Hughley's Prior Record Into Evidence [**Doc. 210**] is **DEFERRED** to the District Court.

### IV. GRAND JURY LISTS

The defendant also requests [Doc. 215] copies of all papers used during the selection and impanelment of the grand jury(ies), which returned indictments against him in this case. He also seeks any papers related to the future selection of the petit jury in this case. He contends that disclosure of these papers is necessary in order for him to determine whether the juries in his case were/will be selected in compliance with the Constitution and laws and whether they fairly represent a random cross section of the community. He contends that if the clerk of court does not comply with his request within ten days, the indictment must be dismissed pursuant to 28 U.S.C. § 1867(a).

The government responds [Doc. 268] that the defendant's motion is untimely, being filed about seven months after his July 15, 2004 motion-filing deadline. Alternatively, it argues that the defendant has alleged no irregularities with respect to grand jury selection and has stated no authority permitting him to receive a list of the grand jurors. It maintains that the defendant is not entitled to a list of grand jurors under Rule 6, Fed. R. Crim. P.

The Court initially addresses the question of the timeliness of the defendant's motion. As the government points out, the defendant's motion filing deadline was July 15, 2004, and the defendant provides no explanation for the filing of this motion beyond that deadline. Moreover, the defendant could have requested the papers relating to the selection of the grand juries that returned his March 5, 2003 [Doc. 3] and April 1, 2003 [Doc. 13] indictments by his motion deadline. The defendant's Second Superseding Indictment [Doc. 139], on the other hand, was not returned until

9

August 4, 2004, which was several weeks after his motion-filing deadline expired. Moreover, the defendant was not arraigned on this third indictment until January 6, 2005 [see Doc. 164], because the issue of his competency to stand trial was pending and he was undergoing a mental evaluation at FMC Butner during the intervening months. Finally, the defendant's petit jury has yet to be selected. Accordingly, the Court finds that the defendant cannot raise issues nor is he entitled to documents relating to his 2003 indictments. The Court will permit the defendant's motion with respect to his 2004 indictment and his petit jury.

The defendant asserts that he has an unqualified right to inspect the papers used in the selection and impanelment of his grand and petit juries pursuant to 28 U.S.C. § 1867(f) and Test v. United States, 420 U.S. 28 (1995). Section 1867 (f) states as follows:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. *The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.* Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both.

(Emphasis added). The Supreme Court explained this provision in Test:

> This provision makes clear that a litigant has essentially an unqualified right to inspect jury lists. It grants access in order to aid parties in the "preparation" of motions challenging jury-selection procedures. Indeed, without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge. Thus, an unqualified right to inspection is required not only by the plain text of the statute, but also by the statute's overall purpose of insuring "grand and petit juries selected

10

> at random from a fair cross section of the community." 28 U.S.C. § 1861.

420 U.S. at 30.

The government summarily argues that Rule 6, Fed. R. Crim. P., prevents disclosure of a list of the grand jurors. Rule 6(b)(1) permits either the government or the defendant to challenge the selection procedures for the grand jury. Subsection (e)(2)(E) of Rule 6, relating to grand jury secrecy, states in pertinent part that

> [t]he court may authorize disclosure–at a time, in a manner, and subject to any other conditions that it directs–of a grand-jury matter: (i) preliminarily to or in connection with a judicial proceeding; [or] (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]

The government contends that the defendant has failed to comply with Rule 6 because he has stated no grounds for dismissal of the indictment that relate to the requested documents. However, the Court observes that if access to grand jury *selection materials* is an "unqualified right," then the government's attempt to engraft a Rule 6(e)(2)(E)(ii) requirement that the defendant state grounds for relief lacks merit. Moreover, information on grand or petit jury *selection* is not "a matter that occurred before the grand jury" as required by Rule 6(e)(2)(E)(ii). In other words, because the defendant is not seeking to learn what occurred during the grand jury proceedings, he does not come within the scope of Rule 6(e)(2)(E)(ii).

On the other hand, courts have not permitted unlimited forays into information relating to the grand jury by defendants seeking fodder for a motion. The statute itself limits disclosure to documents "necessary" to the preparation of a motion. 28 U.S.C. § 1867(f); <u>United States v. Davenport</u>, 824 F.2d 1511, 1515 (7th Cir. 1987). Courts are reluctant to permit disclosure of

11

materials that contain the home addresses or other personal information of prospective jurors:

> To give the defendant an absolute right of routine access to all materials would be an amendment of the Act. . . . . If [jury questionnaires] were released to defendants generally there would exist the possibility of substantial abuse of the information the forms contain, which could have serious consequences for individual jurors and the system.

Id. The Sixth Circuit has affirmed limiting disclosure to the master list from which the grand jury was selected along with the "relevant demographic data about the general pool from which the specific grand jurors were selected" as opposed to the names, addresses, and jury questionnaires of the specific grand jurors who indicted the defendant. United States v. McLernon, 746 F.2d 1098, 1123 (6th Cir. 1984).

In the present case, the Court finds that the defendant is entitled to receive some materials relating to the selection of the grand jury which returned his 2004 indictment and of his petit jury. Because the defendant has made a broad request for materials, the Court cannot know what information he is seeking. The Court finds that copies of the following information should be sufficient for the defendant's preparation and presentation of a motion challenging jury selection procedures:

> (1) the Jury Selection Plan for this district,
>
> (2) a description of the procedures employed in the automatic selection system;
>
> (3) a copy of the Court's authorization and instruction order to the person or computer service which carries out automated name selection tasks for the court,
>
> (4) the Report on Operation of the Jury Selection Plan (JS-12);
>
> (5) a blank Juror Qualification Questionnaire; and

(6) a blank Summons for Jury Service.

With regard to the defendant's request for information used in the selection of his petit jury, information on the impaneled jurors will be available to the defendant, as it is to any other litigant, prior to trial.

If after examining this information, the defendant should determine that additional, specific information is necessary or sought, he may make application for such documents. Accordingly, the defendant's Motion for Inspection of Grand Jury List Pursuant to Title 28 USCA § 1861 and/or Dismissal Pursuant to Title 28 USCA § 1867(a) [**Doc. 215**] is **GRANTED in part** in that the clerk of court is **DIRECTED** to provide the defendant with a copy of the above listed documents. The defendant's motion [**Doc. 215**] is **DENIED** in all other respects.

## V. RETURN OF SEIZED PROPERTY

The defendant asks [Doc. 230] the Court to order the return of $1365.41 illegally seized during his July 6, 2002 arrest in Jeffersonville, Indiana, for failure to appear at a federal proceeding in Knoxville in case number 3:99-CR-128. He maintains that the money is currently retained by the Clark County Jail in Jeffersonville, Indiana. He contends that he needs this money to assist with his defense in this case and to aid his family. He alleges that he filed a motion with the Jeffersonville, Indiana Superior Court for the return of the money on November 2, 2004, but that the court failed to order the prosecutor to return the money. The defendant has attached a copy of his motion before the Jeffersonville Superior Court as an exhibit to the instant motion. Attached to the Jeffersonville motion is a copy of what appears to be a July 6, 2002 inventory report from the Jeffersonville Police Department. The inventory report reflects that $1361 in cash and $4.41 in coins were stored at a

13

certain location ("VB35").

The government responds [Doc. 269] that the motion is untimely because it was filed about seven months after the defendant's motion filing deadline. Alternatively, it contends that the defendant's motion should be denied because the government does not have the funds the defendant is requesting. It asserts that the money is still held by the Jeffersonville, Indiana Police Department and that this money has never been in the possession of the United States, although the government does have other items which were seized during the defendant's July 6, 2002 arrest. It maintains that it is holding these other items for use as evidence in this case and that it has permitted the defendant to inspect these items or has provided copies to him.

The Court finds that this motion [**Doc. 230**] should be **DISMISSED** because it was filed over seven months beyond the defendant's July 15, 2004 motion-filing deadline in this case. The defendant has given no explanation for its late-filing, and as the arrest precipitating the seizure of the money occurred on July 6, 2002, the Court finds no reason why this motion could not have been filed in compliance with the deadline. See Fed. R. Crim. P. 12(e).

Moreover, even if the motion had been timely filed, the record before the Court does not provide this Court with basis for ordering the return of the requested funds. The Federal Rules provide, in pertinent part, that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized." Fed. R. Crim. P. 41(g). In the present case, the defendant alleges that the money was seized in Indiana, and the documents provided by the defendant reflect that the Jeffersonville Police Department is the law enforcement entity that seized and retained the money. The government asserts that the funds in question were never in the

14

possession of the United States Attorney's Office in the Eastern District of Tennessee. Accordingly, the defendant has provided no basis for this Court's ordering the return of the money he requests. If the motion had been timely filed, the Court would deny it for this reason.

### VI. FREEDOM OF INFORMATION ACT REQUEST

Finally, the defendant has filed a motion entitled Motion for Court Order to Order U.S. Attorney Ed J. Schmutzer to Comply with Freedom of Information Act of 1973, Privacy Act of Title 5 U.S.C.A. Sction 552, 552(a). Docket #134. [Doc. 245]. In this motion, the defendant appears to request that the Court order the government to comply with Document 134, which he characterizes as a Freedom of Information Act request, because the information requested therein is necessary for his defense that the United States is bankrupt and, thus, the Uniform Commercial Code applies in this case. He asserts that the failure to grant this motion will deny him due process.

The government responds [Doc. 266] that the motion is untimely as it was filed approximately nine months after the July 15, 2004 motion-filing deadline and without any explanation for its belated filing. It further argues that the defendant's motion is incomprehensible.

Initially, the Court notes that both this motion [Doc. 245] and the document to which it refers [Doc. 134] (filed on July 30, 2004) were filed after the defendant's July 15, 2004 motion-filing deadline. The defendant has provided no explanation, much less good cause, for the late filing of these documents. See Fed. R. Crim. P. 12(e). Moreover, the Court can discern no good reason for the late filing of this motion. Accordingly, the defendant's motion [**Doc. 245**] is **DISMISSED** due to its untimely filing.

Moreover, even if the Court were to attempt to reach the substance of this motion, the Court

15

would not grant the defendant any relief. First, in document 134, the defendant denies the existence of numerous "corporations," including the United States. In the attached affidavit, he asserts that anyone who disagrees with his assertion has ten days in which to file a response or the statements in his affidavit are deemed accepted. The Court finds that document 134 does not appear to be a Freedom of Information Act request. Second, the Court finds the defendant's proposed "defense" that the United States is bankrupt and the UCC applies in this criminal prosecution to be patently frivolous and irrelevant to the charges the defendant is facing. Thus, if the Court were to rule upon the merits of the motion, it would be denied.

## VI. CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

(1) The defendant's Motion to Compel Psychiatric Examination of Compelling Witness [**Doc. 203**] is **DENIED**;

(2) The defendant's motions to be transferred to FMC Lexington [**Docs. 207, 241, and 243**] are **DENIED**;

(3) The defendant's Motion in Limine Prohibiting the Admission of Maurice Hughley's Prior Record Into Evidence [**Doc. 210**] is **DEFERRED** to the District Court;

(4) The defendant's Motion for Inspection of Grand Jury List Pursuant to Title 28 USCA § 1861 and/or Dismissal Pursuant to Title 28 USCA § 1867(a) [**Doc. 215**] is **GRANTED in part** in that the clerk of court is **DIRECTED** to provide the defendant with a copy of

    (a) the Jury Selection Plan for this district,

    (b) a description of the procedures employed in the automatic selection system;

    (c) a copy of the Court's authorization and instruction

16

order to the person or computer service which carries out automated name selection tasks for the court,

(d) the Report on Operation of the Jury Selection Plan (JS-12);

(e) a blank Juror Qualification Questionnaire; and

(f) a blank Summons for Jury Service.

and is **DENIED** in all other respects; and

(5) The defendant's Motion for Court Order for Return of Illegal Seized Property [**Doc. 230**] and Motion for Court Order to Order U.S. Attorney Ed J. Schmutzer to Comply with Freedom of Information Act of 1973, Privacy Act of Title 5 U.S.C.A. Section 552, 552(a). Docket #134. [**Doc. 245**] are **DISMISSED** due to their untimely filing.

**IT IS SO ORDERED.**

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge